Maura A. FITZGERALD f/k/a Maura
A. Mullen Kempf, Appellee

v.

Steven F. KEMPF, Appellant.

Superior Court of Pennsylvania.

Argued April 3, 2002.

Filed July 16, 2002.

Reargument Denied Sept. 18, 2002.

Richard A. Sprague, Philadelphia, for appellant.

Leonard Dubin, Philadelphia, for appellee.

Before: McEWEN, P.J.E., STEVENS, and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 Steven Kempf appeals from the March 26, 2001, order awarding child support in the amount of $11,733 per month. Due to numerous trial court errors, we reverse and remand.

¶ 2 Maura Fitzgerald ("wife") filed a complaint for support on behalf of her two children on February 4, 1999. Trial Court Opinion, 12/10/01, at 1. A recommended order was entered in which appellant would be required to pay $2,239 per month

in child support plus fifty percent of the children's unreimbursed medical expenses. *Id.* An evidentiary hearing was held on December 1, 1999, which resulted in a new recommended order requiring appellant to pay $5,890 per month plus seventy-five percent of private school tuition and ninety percent of the unreimbursed medical expenses. *Id.* at 1–2. Appellant then requested a review by a trial judge. *Id.* at 2.

¶ 3 Appellant and wife were married for eleven years and separated in March 1994. *Id.* at 3. Appellant is the sole shareholder in a subchapter-S company, Steven F. Kempf Co., which reported sales of fifteen million dollars in 1999. *Id.* Wife has remarried since the divorce and now lives in Greenwich, Connecticut, where her new husband works as a bond salesman, earning $3.1 million in 1999 alone. *Id.* at 2–3.

¶ 4 On March 26, 2001, the trial court awarded child support for the two children in the amount of $11,733 per month. *Id.* at 1. Appellant is also required to pay seventy-five percent of private school tuition and ninety percent of unreimbursed medical expenses. *Id.*

■ ¶ 5 Appellant raises the following issues on appeal:

1. Whether the trial court erred by requiring [appellant] to borrow $255,190 from his business line of credit in order to make a subchapter-S distribution to himself as shareholder of the corporation.

2. Whether the trial court erred by failing to amortize father's trust income over the length of father's support obligation.

3. Whether the trial court abused its discretion in its analysis of the children's

reasonable needs by ordering father to pay all of the expenses demanded by mother as part of mother's jet set lifestyle.

4. Whether the trial court committed an error of law by finding father in contempt of court for violation of an order that had been vacated by the trial court.[1]

Appellant's Brief at 5–6.

■ ¶ 6 A trial court's determination regarding a child support award will not be disturbed absent an abuse of discretion. *Mooney v. Doutt,* 766 A.2d 1271, 1273 (Pa.Super.2001). "An abuse of discretion occurs if insufficient evidence exists to sustain a support award, if the trial court overrides or misapplies existing law, or if the judgment exercised by the trial court is manifestly unreasonable." *Colonna v. Colonna,* 788 A.2d 430, 437–38 (Pa.Super.2001).

■ ¶ 7 Appellant first argues that the trial court erred by accepting the testimony of wife's expert, which resulted in the establishment of appellant's net monthly income available for support in 1999 at $35,500. As this sum is manifestly unreasonable and cannot be supported by the record, we must agree with appellant and remand for a recalculation of income.

¶ 8 Wife's expert testified that appellant actually has $35,500 available for support purposes each month because appellant's business "line of credit could have been drawn down completely during 1999 to pay distributions to Mr. Kempf." N.T., 9/27/00, at 92. This is a significantly higher figure, to say the least, than the $9,866 per month appellant claims to have available for child support. Appellant's Brief

---

1. An order declaring a party in contempt is interlocutory, until sanctions or imprisonment are imposed. *Mrozek v. James,* 780 A.2d 670, 672 (Pa.Super.2001), *Sonder v. Sonder* 378 Pa.Super. 474, 549 A.2d 155 (1988). As no sanctions have been imposed in this case, appellant's challenge to the trial court's contempt order is quashed as interlocutory.

at 15. Wife claims that the financial records and the testimony of her expert "clearly shows [appellant] manipulated the corporation's finances in 1999 in order to avoid his support obligation." Appellee's Brief at 14. Apparently, appellant's manipulation of his finances is due to the fact that "as sole shareholder of corporation, [appellant] controlled the amount of distributions to himself by not using the line of credit to finance the accounts receivable but instead using the money the corporation collected." *Id.* at 12.

¶ 9 Appellant may have been able to increase the balance on his credit line in order to shift cash to accounts receivable and then distribute these "earnings" to himself as income. But what can be done by a business on paper and what should be done by that same business in reality could be very different. The business practice of financing accounts receivable with cash collected on the accounts is a perfectly reasonable business practice.

¶ 10 When a payor spouse owns his own business, the calculation of income for child support purposes must "reflect the actual available financial resources of the payor spouse." *Calabrese v. Calabrese,* 452 Pa.Super. 497, 682 A.2d 393, 396 (1996). In addition,

> Our jurisprudence is clear [ ] that the owner of a closely-held corporation cannot avoid a support obligation by sheltering income that should be available for support by manipulating salary, perquisites, corporate expenditures, and/or corporate distribution amounts. By the same token, however, we cannot attribute as income funds not actually available or received by the party.

*Fennell v. Fennell,* 753 A.2d 866, 868 (Pa.Super.2000).

¶ 11 There is absolutely no evidence in the record that appellant was retaining the earnings of his corporation in order to avoid paying child support. The trial court, therefore, erred by attributing to appellant funds which were not available to him as income. The business practice discussed by wife's expert does not free up cash within the company which could then be distributed to appellant. Rather, on a basic level, it appears to this Court that the support order will force appellant to pay his child support obligations on credit. "It would be untenable to argue that proceeds of a loan made to a corporation for the exclusive purpose of making capital expenditures should instead be disbursed as income to the [principal shareholder] of the corporation." *Labar v. Labar,* 557 Pa. 54, 731 A.2d 1252, 1256 (1999). The trial court abused its discretion by requiring appellant to further leverage his company and completely ignoring the fact that appellant will have to repay the bank for these distribution of "cash." On remand, the trial court is directed to refrain from relying on hypothetical paper calculations and determine appellant's actual monthly income based on the reality of appellant's financial situation.

¶ 12 Appellant also argues that the trial court erred in including in the support calculation money received from an inheritance. We agree.

¶ 13 For eight years, appellant received approximately $66,000 a year from an inheritance. The trial court properly included the amount of this inheritance in its calculations of appellant's monthly income for child support purposes in 1999 and 2000. *See Humphreys v. DeRoss,* 567 Pa. 614, 790 A.2d 281, 284 (2002) (income from an estate or trust is income for child support purposes). This trust, however, terminated in December 2000. N.T. at 218. There is no evidence in the record that the trial court took into account the termination of the trust when calculating future

child support payments. Appellant's income will be $66,000 less after December 2000, but he is required to continue making the child support payments based on a higher income. On remand, the trial court is directed to determine the effect of the termination of the trust on appellant's income after December 2000 and adjust the child support award accordingly.

¶ 14 Appellant next argues that the trial court abused its discretion by failing to analyze the reasonable needs of the children. We agree.

¶ 15 The trial court claims to have applied a *Melzer* analysis to determine the amount of child support warranted in this situation. Trial Court Opinion, 12/10/01, at 6. Under *Melzer*, the hearing court must first discern the reasonable expenses of raising the children, given the circumstances. *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991, 995 (1984). Next, the court examines the respective abilities of each parent to support the children. *Id.* at 996. Finally, the court calculates each parent's support obligation. *Id.*

¶ 16 In this case, however, the trial court merely adopts the wife's calculations rather than determining the reasonable needs of the children. This does not meet the requirements enumerated in *Melzer.* The trial court completely fails to determine the reasonable needs of the children evidenced by the fact that the trial court requires appellant to pay a portion of the voluntary charitable contributions and legal fees incurred by the household. In the calculations on her support worksheet, wife lists the expenses of the household, including mortgage payments, real estate taxes, charitable contributions, entertainment, vacations, and then simply prorates 2/6 of those expenses for the children of appellant. A simple division of the needs of the family into equal parts does not satisfy a *Melzer* analysis. *Ball v. Minnick*, 414 Pa.Super. 242, 606 A.2d 1181,

1191 (1992). The trial court then orders appellant to pay one hundred percent of the wife's expenses without regard to the reasonableness of those needs.

¶ 17 Since the lower court failed to determine the reasonable needs of the children, we remand for a thorough determination of the actual reasonable needs of the children.

¶ 18 Appellant also claims the trial court erred by ordering him to pay seventy-five percent of the children's private school tuition. "A private school education may be a reasonable need for a child if it is demonstrated that the child will benefit from such and if private schooling is consistent with the family's standard of living and station in life before the separation." *Pellish v. Gerhart*, 701 A.2d 594, 596 (Pa.Super.1997). Because the children were not of school age at the time of separation, it is unclear whether private schooling is consistent with the parties' standard of living prior to the separation. After a thorough review of the record, we agree with the trial court that "private schooling was preferred by mother and accepted by father except for the reservation that he would not want to be financially responsible." Trial Court Opinion, 12/10/01, at 3. This Court, however, is uncomfortable with the amount of tuition appellant is required to pay, especially considering the faulty monthly income relied on by the trial court to determine his ability to pay. On remand, the trial court is directed to reevaluate the percentage of tuition appellant is required to pay, in light of his actual monthly income, and lower it accordingly.

¶ 19 Order reversed. Case remanded for proceedings in accordance with this decision. Jurisdiction relinquished.