J-S53002-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| S.J.W., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| G.H.W., | : | |
| | : | |
| Appellant | : | No. 407 MDA 2015 |

Appeal from the Order entered January 30, 2015,
Court of Common Pleas, Lancaster County,
Domestic Relations at No. 2014-02264 – PACSES No. 961114835

BEFORE:  DONOHUE, OTT and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED AUGUST 21, 2015**

Appellant, G.H.W. ("Father"), appeals from the order entered on January 30, 2015 by the Court of Common Pleas of Lancaster County, increasing Father's child support obligation to Appellee, S.J.W. ("Mother"), for the parties minor child, C.J.W. ("Child").  For the reasons that follow, we affirm in part and vacate in part the trial court's support order.

Mother and Father have one daughter, Child, age ten.  Mother works full-time for a temporary staffing service, with her current placement being at a company called Compleat Restoration.  Mother's position with Compleat Restoration could become permanent.  Mother earns fifteen dollars per hour and pays a babysitter $110.00 per week.  Father is the owner and sole shareholder of several businesses.  Specifically relevant to this case are Mine Drilling Services, LLC ("MDS") and J. Roy's, Inc. ("J. Roy's"), which provides

Father with his primary source of income. On April 8, 2013, following the dissolution of their marriage, Mother and Father entered into a postnuptial agreement prior to this support matter. According to their postnuptial agreement, Mother received $2,500.00 per month in alimony and $1,500.00 per month in child support from Father.

Mother initiated the instant matter on August 19, 2014 by filing a complaint against Father for support of Child. On October 9, 2014, Mother, with her attorney, and Father, pro se, appeared for a support conference. On October 14, 2014, the trial court entered an order requiring Father to pay Mother $1,354.27 per month in child support and $130.00 in arrears. Pursuant to this order, Father was to provide medical insurance coverage for Child, with Father to pay sixty-eight percent and Mother thirty-two percent of unreimbursed medical expenses.

On October 30, 2014, Mother filed exceptions to the trial court's October 14, 2014 order. On November 6, 2014, Mother petitioned the trial court requesting that the court list this matter as complex. The trial court granted Mother's request and scheduled a hearing for January 28, 2015. On January 22, 2015, Mother filed a motion for compliance because Father failed to answer interrogatories and produce documents requested by Mother on December 16, 2015. The same day, the trial court ordered Father to file answers to the interrogatories and produce the documents requested.

On January 28, 2015, both parties appeared at the scheduled hearing, Mother with counsel and Father once again pro se. The trial court heard testimony from both Mother and Father in addition to the testimony of Mother's witness, David M. Weiss, CPA (Weiss) of Simon Lever, an expert in business valuation, who provided a report in the form of a financial analysis of Father's personal and business income ("the Weiss Report"). Weiss based his testimony and report on Father's 2013 tax return, the tax returns for several of his businesses, including MDS and J. Roy's, and Father's October 9, 2014 pay stub. Weiss concluded that Father had support income available to him in the net amount of $344,890 per year, or $28,740.83 per month.

On January 30, 2015, the trial court issued a support order, pursuant to Rule 1910.16-3.1 of the Pennsylvania Rules of Civil Procedure, which sets forth support guidelines for high-income cases. The trial court accepted Weiss' testimony as accurate and found Father's monthly net income available for support was $28,740.83, or $344,890 annually. According to the January 30, 2015 order, Father was to pay Mother $2,968.27 per month in child support effective September 19, 2014 and $3,006.06 effective on December 1, 2014.[1] Father still was to provide medical insurance coverage for Child, with Father paying eighty-seven percent and Mother thirteen

---

[1] The two tiers were necessary because of an increase in childcare expenses that Mother incurred.

percent of any unreimbursed medical expenses for Child over $250.00 per year.

On February 26, 2015, Father filed a motion for reconsideration, which the trial court denied the same day. On February 27, 2015, Father filed a timely notice of appeal. On March 3, 2015, the trial court ordered Father to file a concise statement of the errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. On March 24, 2015, Father filed his timely Rule 1925(b) statement.

On appeal, Father raises the following issues for our review and determination:

> 1. The trial court's reliance on the Weiss Report in its entirety is an abuse of discretion because it improperly includes an increased line of credit for [MDS] as cash available to [Father], while failing to review the business' operational expenses.
>
> 2. The trial court abused its discretion by including the full purchase price of a 2013 Porsche, when Appellant's W-2 provides for the use, resulting in a double-dip.
>
> 3. The trial court's reliance on the Weiss Report in its entirety is an abuse of discretion because it includes depreciation for [J. Roy's] as income to [Father] without determining whether the amount he receives increases as a result.
>
> 4. The trial court abused its discretion by entering the order of January 28, 2015, without requiring the parties to submit income and expense statements required by Pa.R.C.P. 1910.11(c)(2) and Pa.R.C.P. 1910.16-3.1.

Father's Brief at 5.[2]

Our standard of review when considering an appeal from a child support order is as follows:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*McClain v. McClain*, 872 A.2d 856, 860 (Pa. Super. 2005) (internal citations omitted). "A support order will not be disturbed on appeal unless the trial court failed to consider properly the requirements of the Rules of Civil Procedure Governing Actions for Support, Pa.R.C.P. 1910.1 *et seq.*, or abused its discretion in applying these Rules." *Berry v. Berry*, 898 A.2d 1100, 1103 (Pa. Super. 2006).

For his first three issues on appeal, Father contends that the trial court abused its discretion and misapplied the law because it determined, relying on the Weiss Report, that his income available for child support was $344,890 annually, or $28,740.83 per month. *See* Father's Brief at 11-21.

---

[2] We have reorganized and renumbered Father's issues for ease of review.

First, Father argues that the Weiss Report improperly included a line of credit worth $111,000 for MDS as cash available to Father. *See id.* at 12-18. Father contends that in doing so, the trial court acted contrary to established Pennsylvania case law, as it would require him to pay his child support obligation on credit, with funds that have to be repaid with interest. *See id.* at 12-16. Father avers that this was improper because there was no evidence introduced during the January 28, 2015 hearing that he used MDS to shelter income and avoid his child support obligation. *Id.* at 12-15. Furthermore, Father asserts that the Weiss Report did not take into consideration the expenditures, in addition to the debts, of MDS for which Father might to use the line of credit to pay. *Id.* at 16-17. Thus, Father asks us to remand this case to the trial court for a determination of his income available for support without the inclusion of the $111,000 MDS line of credit. *Id.* at 18.

"Generally, the amount of support to be awarded is based upon the parties' monthly net income." Pa.R.C.P. 1910.16-2. Our Court has stated, "[i]n considering this matter, all reasoning must begin with an evaluation of a parties' income that is available for support. The assessment of the full measure of a parent's income for the purposes of child support requires courts … to determine ability to pay from all financial resources." *D.H. v. R.H.*, 900 A.2d 922, 930 (Pa. Super. 2006) (citation and internal quotations omitted). Therefore, "[w]hen determining income available for child

support, the court must consider all forms of income." ***Berry***, 898 A.2d at 1104 (citation and internal quotations omitted); ***see*** Pa.R.C.P. 1910.16-2(a).

The Domestic Relations Code defines the term "income" as follows:

> **"Income."** Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S.A. § 4302.

Importantly, in regards to business income, this Court has held:

> Support orders "must be fair, non-confiscatory and attendant to the circumstances of the parties." ***Fennell v. Fennell***, 753 A.2d 866, 868 (Pa. Super. 2000). "When a payor spouse owns his own business, the calculation of income for child support purposes must reflect the actual available financial resources of the payor spouse." ***Fitzgerald v. Kempf***, 805 A.2d 529, 532 (Pa. Super. 2002) (internal quotation marks omitted). Further, "**all benefits flowing from corporate ownership must be considered in determining income**

>>> **available to calculate a support obligation**.”
> *Fennell*, *supra* at 868 (emphasis added).

*Spahr v. Spahr*, 869 A.2d 548, 552 (Pa. Super. 2005) (emphasis in original). Additionally,

> [o]ur jurisprudence is clear, therefore, that the owner of a closely-held corporation cannot avoid a support obligation by sheltering income that should be available for support by manipulating salary, perquisites, corporate expenditures, and/or corporate distribution amounts. By the same token, however, we cannot attribute as income funds not actually available to or received by the party.

*Fennell*, 753 A.2d at 868.

Father argues that this Court's decision in *Fitzgerald* is controlling. *See* Father's Brief at 13-15. In *Fitzgerald*, the appellant, the sole shareholder of a Subchapter S corporation,[3] argued that the trial court erred by accepting the testimony of the appellee's expert, who testified that the appellant's net monthly income available for support was $35,500. *Fitzgerald*, 805 A.2d at 531. The appellee's expert testified that the appellant had such a high income available for support because the appellant could have completely drawn down his business' line of credit to pay distributions to himself. *Id.*

---

[3] A Subchapter S corporation is “[a] corporation whose income is taxed through its shareholders rather than through the corporation itself. Only corporations with a limited number of shareholders can elect S-corporation tax status under Subchapter S of the Internal Revenue Code.” BLACK'S LAW DICTIONARY 368 (8th ed. 2004).

This Court held that the trial court erred in including the business' line of credit in the calculation of the appellant's income available for support. *Id.* at 532. Our Court reasoned:

> Appellant may have been able to increase the balance on his credit line in order to shift cash to accounts receivable and then distribute these "earnings" to himself as income. But[,] what can be done by a business on paper and what should be done by that same business in reality could be very different.
>
> *       *       *
>
> There is absolutely no evidence in the record that appellant was retaining the earnings of his corporation in order to avoid paying child support. The trial court, therefore, erred by attributing to appellant funds which were not available to him as income. The business practice discussed by wife's expert does not free up cash within the company which could then be distributed to appellant. Rather, on a basic level, it appears to this Court that the support order will force appellant to pay his child support obligations on credit. "It would be untenable to argue that proceeds of a loan made to a corporation for the exclusive purpose of making capital expenditures should instead be disbursed as income to the [principal shareholder] of the corporation." *Labar v. Labar*, [] 731 A.2d 1252, 1256 ([Pa.] 1999). The trial court abused its discretion by requiring appellant to further leverage his company and completely ignoring the fact that appellant will have to repay the bank for these distribution of "cash." On remand, the trial court is directed to refrain from relying on hypothetical paper calculations and determine appellant's actual monthly income based on the reality of appellant's financial situation.

*Id.*

- 9 -

We agree with Father that **Fitzgerald** is controlling. Here, like **Fitzgerald**, Father is the sole shareholder of MDS, a Subchapter S corporation. **See** Weiss Report, 12/15/14, at 4; **see also** N.T., 1/28/15, at 43. Also like **Fitzgerald**, there is no evidence that Father was sheltering or manipulating income to avoid his support obligation. By including the line of credit for MDS in Father's income, Weiss' analysis attributes to Father funds that were not available for income and forces Father to pay his child support obligations on credit. **See** Weiss Report, 12/15/14, at 5, 7. Thus, the trial court assigned to him as income money that he will have to repay, with interest, now or in the future. Therefore, fundamentally, it was improper for the trial court to include the line of credit as income to Father. **See Fitzgerald**, 805 A.2d at 532. Accordingly, we conclude that the trial court abused its discretion by including the line of credit of $111,000 for MDS as cash available to Father.

Mother argues that **Fitzgerald** is inapplicable to this case because Weiss converted MDS' 2013 corporate tax return from an accrual basis to a cash basis[4] and as a result, Father benefitted from the repayment of debt

---

[4] Weiss explained the differences between cash basis accounting and accrual basis accounting as follows:

> The primary difference between cash method of accounting and accrual method of accounting would be, let's say by way of example, for expenses, if we had a utility bill for service that was provided in 2012 -- I'm using these periods to coincide with the 2013

that he otherwise would not have received had Weiss used the accrual basis return. *See* Mother's Brief at 11-14. This repayment of debt, Mother argues, lowered Father's income available for support. *See id.* Mother asserts that the debt, which exceeded the $111,000 line of credit, effectively nullified the impact of the line of credit, as MDS could have applied the line of credit in its entirety towards the repayment of debt. *See id.* at 13-14. Thus, Mother contends the line of credit had no impact on the income Father derived from MDS. *Id.* at 14.

We find Mother's argument unavailing. There was no requirement that Weiss convert MDS' 2013 corporate tax return from an accrual basis to a cash basis, therefore giving Father the benefit of debt repayment he otherwise would not have received. Additionally, even if Father had applied the entirety of the $111,000 line of credit towards repaying MDS' debt, this does not account for the fact that at some point, MDS would have to repay the bank, and therefore, it could not have been income available to Father. Accordingly, we remand this case to the trial court for the calculation of

---

returns -- the service was provided in December of 2012, but it was paid in January of 2013. On a cash basis, expenses can only be deducted in the year paid regardless of when that service took place.

On the accrual basis, the utility bill would have been recorded as an expense in 2012 because the service was provided in 2012.

N.T., 1/28/15, at 14.

Father's support obligation without the inclusion of the $111,000 line of credit as income available for support.

Second, Father argues that the trial court abused its discretion in relying on the Weiss Report in determining his income available for support because the Weiss Report included the full purchase price of a 2013 Porsche Cayenne in his income available for support. Father's Brief at 19-20. Father contends that his W-2 accounted for the use of the 2013 Porsche Cayenne, resulting in the vehicle counting twice towards his income available for support. *Id.*

This Court has held that "even if not received by the support obligor as cash, personal perquisites, such as entertainment and personal automobile expenses, paid by a party's business must be included in income for purpose of calculating support." *Fennell*, 753 A.2d at 868 (quotations and citations omitted). The certified record reflects that J. Roy's purchased the 2013 Porsche Cayenne for $72,023. N.T., 1/28/15, at 20-21; *see also* Plaintiff's Exhibit 12. The certified record further reflects that Father is the sole proprietor of J. Roy's and in complete control of how J. Roy's disburses its funds. *See* N.T., 1/28/15, at 42-43; *see also* Plaintiff's Exhibit 12. There is also no dispute that Father is the sole driver of the 2013 Porsche Cayenne. *See* N.T., 1/28/15, at 46. Father has provided no evidence that his W-2 from J. Roy's accounted for the full purchase price of the vehicle or evidence to refute any of the aforementioned testimony. Accordingly, we conclude

that the trial court did not err including the full purchase price of the 2013 Porsche Cayenne in Father's income available for support. **See Fennell**, 753 A.2d at 868.

Third, Father argues that the trial court erred in relying on the Weiss Report in determining his income available for support because the Weiss Report improperly included $78,251 worth of depreciation for J. Roy's as income to Father. **See** Father's Brief at 18-20. We conclude that Father has not preserved his third issue for review. It is well settled that "[i]ssues not raised before the trial court are not preserved for appeal and may not be presented for the first time on appeal." **Rabatin v. Allied Glove Corp.**, 24 A.3d 388, 391 (Pa. Super. 2011); Pa.R.A.P. 302(a). Here, Father did not raise the issue of the Weiss report improperly including $78,251 worth of depreciation for J. Roy's at any point before the trial court. Accordingly, Father has waived this issue on appeal.[5]

For these same reasons, Father has also not preserved his fourth issue for review, that the trial court abused its discretion by entering the January 28, 2015 order without requiring either party to submit for review the

---

[5] Even if Father had preserved his third issue for appeal, it would not entitle him to any relief. The certified record on appeal reflects that the Weiss Report did not include the $78,251 worth of depreciation for J. Roy's in the calculation of income available for support. See Weiss Report, 12/15/14, at 6-7. Likewise, Weiss testified that he did not include any cash from J. Roy's as income available to Father for support because there was none and that he included a financial breakdown of J. Roy's tax return merely for informational purposes. **See** N.T., 1/28/15, at 20-21. Accordingly, this argument is meritless.

income and expense statements required under Rule 1910.11(c)(2) of the Pennsylvania Rules of Civil Procedure. *See* Father's Brief at 21-23. Father made no mention of the parties' non-compliance with Rule 1910.11(c)(2) until his concise statement of the errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. Accordingly, Father has waived his fourth and final issue on appeal.[6] *See Rabatin*, 24 A.3d at 391; Pa.R.A.P. 302(a).

Order affirmed in part and vacated in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2015

---

[6] We note again that even if Father had preserved his fourth issue for appeal, it would not entitle him to any relief. While Rule 1910.11(c)(2) did require the parties in this case to submit income and expense statements, Father does not cite any rule, case, or statute, that obligates the trial court to consider the income and expense statements in its support determination. The record here, including the Weiss Report, the parties' tax returns, the parties' pay stubs, and the tax returns for Father's businesses provided all the information the trial court needed to make a support determination under Rule 1910.16-3.1. *See* Plaintiff's Exhibits 1-12; *see also* Rule 1910.16-3.1. Therefore, Father was not prejudiced by the parties' failure to file income and expense statements.