J. S62031/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| D.M.P., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 668 EDA 2018 |
| | : | |
| B.R.B. | : | |

Appeal from the Order, January 31, 2018,
in the Court of Common Pleas of Bucks County
Domestic Relations Division at No. 2015DR00538,
pacses No. 014115221

BEFORE:  LAZARUS, J., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED NOVEMBER 20, 2018**

D.M.P. ("Mother") appeals from the January 31, 2018 order entered in the Court of Common Pleas of Bucks County that determined the child support obligations of B.R.B. ("Father") for the support of the parties' minor child, B.B., born out of wedlock in October 2014 ("Child").  We affirm.

The trial court set forth the following:

> On March 27, 2015, Mother filed a Complaint for Support.  A hearing to address this matter was scheduled and continued numerous times.  The support hearing was ultimately held on December 4, 2017 and December 5, 2017.  We rendered our decision on December 13, 2017 and entered an Order of the Court on that same day.  On December 29, 2017, we amended that Order.  Then, in an abundance of caution, we subsequently created a Final Order, dated January 31, 2018 that clarified what was intended in the two prior Orders.  The Final Order included the following, verbatim:

The Interim Order dated 05/06/15 is rescinded. Effective 3/27/15, Defendant/Father is to pay the sum of $7,020.00 per month for the support of one child. Arrears are to be liquidated at $1,404.00 per month. Effective 11/2/15, [Father] is to pay the sum of $7,408.00 per month for the support of one child. Arrears are to be liquidated at $1,482 per month. Effective 04/01/16, [Father] is to pay the sum of $6,709.00 per month for the support of one child. Arrears are to be liquidated at $1,342.00 per month. Health care coverage to be provided by [Father]. Unreimbursed medical expenses that exceed $250.00 annually per child are to be paid 100% by [Father]. Order considers health insurance coverage by the parties for the child and also considers the parties['] overnights. Court further orders that [Father] is to cover 100% of all special needs expenses for the child. Court finds [Father's] income to be $75,000.00 net per month and [Mother's] income to be $4,134.00 gross per month from 3/7/15 through 3/31/16 and then "zero" from 4/1/16 to present. [Father] is responsible for a payment of a one-time Judicial Computer System Fee of $35.50.

On January 11, 2018, Mother appealed the December 13, 2017 and December 29, 2017 Orders of the Court. Those appeals, which were docketed at 279 and 280 EDA 2018 have since been discontinued.

The original Order of December 13, 2017 and the Amended Order of December 29, 2017 were subsequently clarified by a Final Order dated January 31, 2018 and produced above verbatim. Mother filed an appeal of that Order on March 19, 2018 and that appeal is docketed at 668 EDA 2018.

Trial court opinion, 5/8/18 at 1-2.

The record reflects that the trial court ordered Mother to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a). Mother timely complied. The trial court then filed its Rule 1925(a) opinion.

Mother raises the following issues for our review:

> A. Whether the Trial Court abused its discretion when it failed to include all retained earnings of [Father's two business entities, X Corporation and Y Management] in Father's income when clear findings were made on the record that Father has a 100% controlling interest in [Father's two business entities], that the retained earnings were actually available to Father, that the retained earnings were excessive, and that Father failed to meet his burden of proof that such retention was necessary to maintain or preserve his business?
>
> B. Whether the Trial Court abused its discretion by failing to quantify what amount of the retained earnings in [Father's two business entities] were included in Father's income for purposes of calculating Father's child support obligation?
>
> C. Whether the Trial Court abused its discretion in failing to consider or deviate the support Order upward when Father only has custody of the minor child 21 percent of the time, when the Support Guidelines Pa.R.C.P. 1910.16.1, presumes that children spend 30 percent of the time with the obligor?
>
> D. Whether the Trial Court abused its discretion by failing to specify, in writing or on the record, the guideline amount of support, and the reasons for, and finding of fact justifying,

the amount of the deviation pursuant to
Pa.R.C.P. 1910.16-5(a)?

Mother's brief at 6.

When reviewing a child support order, we employ the following
standard of review:

> [T]his Court may only reverse the trial court's
> determination where the order cannot be sustained
> on any valid ground. We will not interfere with the
> broad discretion afforded the trial court absent an
> abuse of the discretion or insufficient evidence to
> sustain the support order. An abuse of discretion is
> not merely an error of judgment; if, in reaching a
> conclusion, the court overrides or misapplies the law,
> or the judgment exercised is shown by the record to
> be either manifestly unreasonable or the product of
> partiality, prejudice, bias or ill will, discretion has
> been abused.

*W.A.M. v. S.P.C.*, 95 A.3d 349, 352 (Pa.Super. 2014) (citations omitted). A
finding of an abuse of discretion must rest upon a showing by clear and
convincing evidence, and the trial court will be upheld on any valid ground.
*Baehr v. Baehr*, 889 A.2d 1240, 1243 (Pa.Super. 2005). Additionally, the
fact-finder, having heard the witnesses, is entitled to weigh the evidence and
assess its credibility. *Id.* at 1245. Moreover, support orders "must be fair,
non-confiscatory and attendant to the circumstances of the parties."
*Fennell v. Fennell*, 753 A.2d 866, 868 (Pa.Super. 2000) (citation omitted).

Mother first complains that the trial court erred when it failed to
include all retained earnings of Father's two business entities to determine
Father's monthly net income after it found that Father controls 100 percent

of those two business entities; that the retained earnings were actually available to Father; that the retained earnings were excessive; and that Father failed to demonstrate that retention of the earnings was necessary to maintain or preserve his businesses.

The Domestic Relations Code defines "income" as follows.

> **"Income."** Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S.A. § 4302.

With respect to business income, this court has held that "[w]hen a payor spouse owns his own business, the calculation of income for child support purposes must reflect the actual available financial resources of the payor spouse." *Fitzgerald v. Kempf*, 805 A.2d 529, 532 (Pa.Super. 2002) (internal quotation marks and citation omitted). Therefore, all benefits flowing from business ownership must be considered in determining income

available for a support obligation. ***See Fennell***, 753 A.2d at 868. A business owner "cannot avoid a support obligation by sheltering income that should be available for support by manipulating . . . distribution amounts." ***Id.*** "By the same token, however, [this court] cannot attribute as income funds not actually received by the party." ***Id.***

Here, the trial court held a two-day hearing to determine, among other things, Father's monthly available net income. Mother argued that the average of Father's monthly available net income for child support for the years 2015, 2016, and 2017 was $126,833. Father argued that his monthly available net income for child support for 2015 was $32,560 and $25,862 for 2016 and 2017. (***See*** trial court opinion, 5/8/18 at 6.) At the hearing, the trial court heard the testimony of Mother's expert, Father's expert, and Mother. Additionally, the trial court received into evidence 44 of Mother's exhibits that largely consisted of Father's personal and corporate tax returns, bank statements, and cancelled checks, and totaled nearly 2,000 pages. "After reviewing all the relevant evidence in this case," which took "several days," the trial court found that

> Father had a cash income of at least one thousand dollars a week, as no testimony or evidence was presented to contradict the evidence presented by Mother about Father's cash income being somewhere between $1,300 and $13,000 a month.

> Further, we found that because no evidence was presented regarding the cost of alleged planned improvements that [X] Corporation was going to have to move their business to another location,

Father was in large part retaining earnings in his wholly owned corporations not completely for business purposes but instead in an attempt to reduce his income for the purpose of also reducing his support obligations.

Similarly, we found that the amount of retained earnings was excessive. In addition, even though we believed that due to the expansion of the business, some increase in retained earnings was justified, the amount of earnings that have been retained in the corporation since the child was born and the support issue was raised was excessive and was being done at least in part to defer income to a later point when Father would no longer be obligated to pay child support. We also recognized that some portion of the retained earnings were in fact income that was recognized as income for tax purposes since it was accounts receivable but in fact was not actual money received by the company and therefore was not actually available to be paid to Father, even if Father wanted it paid to him.

Additionally, although we determined that a number of items were double counted by Mother's expert (Sean O'Reilly) with regard to Father's income, we ultimately found that Father had a substantial income capability and that he was choosing not to exercise his ability to earn all of the income that he has the potential to earn as he has one hundred percent controlling interest in both of his corporations. We credited the testimony of Father's expert (Gregory Cowhey) over that of Mother's expert in this regard to a large extent. Considering everything we found that Father has a net income for child support of $75,000 a month, and the Support Order was entered based on that determination.

Trial court opinion, 5/8/18 at 4-5 (citation to notes of testimony omitted).

Mother complains that because the trial court found, as a matter of fact, that Father controlled 100 percent of his two business entities, that

retained earnings of those businesses were excessive, that the retained earnings were available, and that Father failed to meet his burden of proving that retention of those earnings was necessary to retain and preserve his businesses, that the trial court was required, as a matter of law, to include **all** of the retained business earnings in Father's monthly available net income. Mother cites no case law to support this contention. Additionally, Mother ignores the trial court's factual findings that justified retention of some business earnings; specifically, the trial court concluded that Father needed to retain capital to expand his businesses; Father's retention of a portion of the earnings was income for tax purposes, but not received as cash; and Mother's expert double counted a number of items when he calculated Father's net available income. (Trial court opinion, 5/8/18 at 4-5.) We find no abuse of discretion.

Mother next complains that the trial court erred by not quantifying the amount of retained earnings it included in determining Father's net available income. Although we note that Mother cites no case law to support her seeming position that the trial court was required to assign a precise number to the retained earnings it included, the trial court explained that:

> [Mother's] complaint essentially is that we did not calculate the support amount with mathematical precision and we did not include all of the retained earnings as income available for support. In this case we did not feel that a precise mathematical calculation was possible. Contrary to what Mother advocated, Father presented evidence that justified some increase in retained earnings for his businesses

based on its increasing size. In particular we found that the increasing size and the nature of his business required additional capital for additional equipment and to be able to get the necessary performance bonds that were contractually required by the nature of the business. Unfortunately, the nature of equipment financing and the bonding business is neither static nor governed by precise formulas. As such the evidence convinced us that an increased level of retained earnings was required by his growing business. We therefore refused to blindly determine that all retained earnings constituted income available for support.

Mother advocated that if we did so Father would have net income available for support of $126,833.00 on average for the years in questions [sic]. Father advocated that his net income available for support was only $32,560.00 for 2015 and $25,862.00 for 2016 and 2017. As indicated, Mother's numbers were inaccurate both because of the retained earnings issue and because she double counted a number of items.

The fact that we could not precisely calculate exactly what [Father's] net monthly income for support did not mean that we could not enter a support order.

Trial court opinion, 5/8/18 at 5-6.

We find no abuse of discretion.

Mother next complains that the trial court erred by failing to consider or deviate the child support order upward when Father has custody of Child 21 percent of the time and the support guidelines presume that children spend 30 percent of the time with the obligor. In support, Mother cites to the following portion of a paragraph in the 2010 explanatory comment contained in Pa.R.Civ.P. 1910.16-4:

> The basic support schedule incorporates an assumption that the children spend 30 percent of the time with the obligor and that the obligor makes direct expenditures on their behalf during that time. Variable expenditures, such as food and entertainment, that fluctuate based upon parenting time, were adjusted in the schedule to build in the assumption of 30 percent parenting time. . . [.]

> The calculation in Rule 1910.16-4(c) reduces an obligor's support obligation further if the obligor spends significantly more time with the children. The obligor will receive an additional 10 percent reduction in the amount of support owed at 40 percent parenting time, increasing incrementally to a 20 percent reduction at 50 percent parenting time. . . [.]

Mother's brief at 28, citing Pa.R.Civ.P. 1910.16-4, 2010 explanatory comment (ellipses in Mother's brief).

Mother also cites to the following portion of the explanatory comment contained in Pa.R.Civ.P. 1910.16-1:

> upward deviation <u>should be considered</u> in cases in which the obligor has little or no contact with the children.  However, upward deviation may not be appropriate where an obligor has infrequent overnight contact with the child, but provides meals and entertainment during daytime contact.

Mother's brief at 29 citing Pa.R.Civ.P. 1910.16.4 (emphasis in Mother's brief).

As noted in the comment to Pa.R.Civ.P. 1910.16-4, "[u]pward deviation **should be considered** in cases in which the obligor has little or no contact" with the child.  Pa.R.Civ.P. 1910.16-45, 2010 explanatory comment (emphasis added).

Here, at the child support hearing, the trial court stated that "it is appropriate in this case to deviate from the Child Support Guidelines on a couple of issues" and further acknowledged that it "collectively looked at the factors for deviation and made . . . what deviation was necessary and appropriate based on all of the circumstances." (Notes of testimony, 12/5/17 at 7-8.) Therefore, the record supports the conclusion that the trial court considered all deviation factors, including the amount of time Child spends with Father. Consequently, the record belies Mother's claim and it necessarily fails.

Mother finally complains that the trial court "erred by failing to specify, in writing or on the record, the guideline amount of support, and the reasons for, and finding of fact justifying, the amount of the deviation pursuant to Pa.R.C.P. 1910.16-5(a)." (Mother's brief at 30.) In so arguing, Mother ignores that part of Rule 1910.16-5 that requires the guideline amount and reasons for deviation to be specified in writing or on the record only "if the amount of support deviates from the amount of support determined by the guidelines." Pa.R.Civ.P. 1910.1605(a). Here, the amount of support awarded did not deviate from the amount of support determined by the guidelines. In fact, Mother makes no claim that it did. Therefore, Rule 1910.16-5(a) did not require the trial court to place its reasons for deviation in writing or on the record. Consequently, Mother's claim fails.

Nevertheless, we note that the trial court did set forth its deviations on the record at the child support hearing, as well as in its Rule 1925(a) opinion, which assigned Mother an income of zero and required Father to provide Child's health insurance coverage, pay 100 percent of any excess medical costs, and pay 100 percent of Child's special needs expenses. (Notes of testimony, 12/5/17 at 7-9; trial court opinion, 5/8/18 at 5.)

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/18