Jennifer L. **GIBBONS,** Appellee

v.

Matthew A. **KUGLE,** Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 14, 2006.

Filed Sept. 22, 2006.

Thomas D. O'Shea, York, for appellant.

Jody A. Leighty, York, for appellee.

BEFORE: JOYCE, PANELLA and COLVILLE *, JJ.

OPINION BY COLVILLE, J.:

¶ 1 This is an appeal from the trial court order requiring Appellant Father to contribute to the parochial school tuition of the parties' minor daughter ("S.K.") in proportion to his net income. Father presents the following issues for our review: (1) whether the trial court erred in requiring Father to pay support for private schooling because private schooling was not consistent with the standard of living and station of life of the parties prior to separation; and (2) whether the trial court violated Father's right of conscience under Article I, Section 3 of the Pennsylvania Constitution in requiring Father to financially contribute to a Roman Catholic School. We affirm.

■ ¶ 2 We view Appellant's claims with the following consideration:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's

child is absolute, and the purpose of child support is to promote the child's best interests.

*Samii v. Samii,* 847 A.2d 691, 694 (Pa.Super.2004) (citations omitted).

¶ 3 The relevant facts are as follows. Mother and Father were married in 1990 and lived in York County, Pennsylvania, during the duration of their marriage. The parties' union produced two children: S.K., born May 19, 1993, and K.K., born February 6, 1995.[1] The parties separated in April 1997, at which time Mother moved to Maryland to be near her extended family who resided there. At the time the parties separated, S.K. was four years old and K.K. was two. Neither child was of school age, although S.K. had briefly attended a preschool at a Methodist church near the parties' residence in Pennsylvania.[2] The parties divorced on or about October 30, 1997.

¶ 4 When S.K. began attending school, she attended public school in Queen Anne's County, Maryland. In 2002, upon Mother's remarriage to her current husband, Mother and children moved into Mother's husband's house which was located in a different school district than that which S.K. was currently attending. Thus, S.K. was required to transfer to the public elementary school in Anne Arundel County, Maryland, in the third grade. S.K. then attended sixth grade at Wiley H. Bates Middle School ("Bates"), the public middle school in Anne Arundel County, Maryland. Due to Mother's concerns that S.K. was threatened while attending sixth grade at the middle school, that the environment at the school was not conducive to learning, that the teachers lacked control in the

---

* Retired Senior Judge assigned to the Superior Court.

1. At the time of the trial court's March 9, 2006, opinion and order, S.K. was twelve years old and K.K. was eleven.

2. S.K. is being raised a Methodist.

classrooms, as well as the regular occurrence of fights in the hallways, Mother enrolled S.K. in St. Mary's Elementary School ("St. Mary's"), a private Catholic school located in Annapolis, Maryland. The tuition at St. Mary's is approximately $6,230.00 per year. At the time of the March 9, 2006, opinion and order of the trial court, S.K. was attending seventh grade at St. Mary's.

¶ 5 Approximately two years after the parties' divorce, on November 17, 1999, a domestic relations order was entered directing Father to pay Mother for the support of the parties' two children. The November 17, 1999, support order was not revised until Mother filed a petition for modification on October 3, 2005, requesting recalculation of the child support after adjusting for Father's increase in income and specifically requesting contribution from Father for private school tuition. Thereafter, at a conference before a hearing officer on December 7, 2005, Father was directed to pay support to Mother for the parties' two children in the amount of $1,857.00 per month plus an additional $264.79 per month toward parochial school tuition of S.K. The hearing officer apportioned the tuition among the parties equally. Father requested a *de novo* hearing of the hearing officer's decision that he be directed to contribute toward the parochial school tuition of S.K. for the same reasons that form the basis for the instant appeal. Mother requested a *de novo* hearing on

the basis that the hearing officer erred in the calculation of the amount of tuition for private school by allocating the tuition equally between the parties instead of based on the parties' proportionate share. After a hearing with respect to these issues, on March 9, 2006, the trial court ordered Father to contribute to S.K.'s parochial school tuition and that the tuition must be allocated between the parties in proportion to their net incomes.[3] Father's appeal of this order followed.

¶ 6 Father first argues that the trial court erred in requiring him to pay support for private school because private schooling is not consistent with the standard of living and station of life of the parties prior to separation. Father also asserts in his appellate brief that S.K. will not benefit from attending private school.[4]

■ ¶ 7 In *Knapp v. Knapp,* 758 A.2d 1205 (Pa.Super.2000), this Court, in upholding an order requiring the appellant to pay tuition for a parochial school, concluded that parochial schools fall within the definition of a private academic school and, therefore, within the purview of Pa.R.C.P. 1910.16–6(d) of the Pennsylvania Child Support Guidelines. Pa.R.C.P.1910.16–6(d) provides:

> **Private School Tuition. Summer Camp. Other Needs.** The support schedule does not take into consideration expenditures for private school tuition or other needs of a child which are

---

3. The trial court remanded the matter to the domestic relations office to recalculate Father's support to include his proportional share of S.K.'s parochial school tuition. On March 15, 2006, a modified domestic relations order was entered in accordance with the trial court opinion and order dated March 9, 2006, dividing the tuition expense for S.K. proportionate to the parties' incomes.

4. The assertion that S.K. will not benefit from attending private school, although not specifi-

cally set forth by Father as one of the questions presented on appeal, is argued by Father in his appellate brief. Because both a determination of the benefit of private school as well as whether it is consistent with the standard of living and station of life of the parties are considered by the court in determining whether private school is a reasonable expense, we will address on the merits the issue of the benefit of private schooling to S.K.

not specifically addressed by the guidelines. If the court determines that one or more such needs are reasonable, the expense thereof shall be allocated between the parties in proportion to their net incomes. The obligor's share may be added to his or her basic support obligation.

Pa.R.C.P.1910.16–6(d). Thus, the Support Guidelines allow the court to include private school tuition in the support amount if the court determines that the need for private school is a reasonable one. In determining whether a need is reasonable, this Court has stated:

A private school education may be a reasonable need for a child if it is demonstrated that the child will benefit from such and if private schooling is consistent with the family's standard of living and station in life before the separation. If these factors are proved, a court may order a parent to provide financial support for the private schooling of a minor child.

*Pellish v. Gerhart,* 701 A.2d 594, 596 (Pa.Super.1997) (quoting *Litmans v. Litmans,* 449 Pa.Super. 209, 673 A.2d 382, 395 (1996)). In *Francis v. Francis,* 358 Pa.Super. 391, 517 A.2d 997 (1986), this Court found no abuse of the trial court's discretion in ordering the husband to pay for his daughter's private school based on the record evidence of the advantages to the child, the family's social status, as well as the income and earning potential of the father.

¶ 8 After hearing the evidence, the trial court determined that the need for S.K. to attend St. Mary's is a reasonable one. In rendering its decision, the trial court first determined that S.K. is benefiting from her enrollment at St. Mary's. The trial court found that:

While attending sixth grade at Bates, [S.K.] encountered many disruptions from learning. In fact, Laura Lane, a current teacher at St. Mary's who had previously taught at Bates for three years, testified that police officers were commonplace at Bates for disciplinary reasons and that physical as well as verbal altercations erupted frequently. Furthermore, Ms. Lane listed some of the usual disruptions from educational instruction, including students talking back to teachers, arguing and fighting with each other, wandering around the classroom, and yelling across the room.

In contrast, [S.K.] does not encounter said disruptions at St. Mary's. Regarding the learning environment of St. Mary's, Ms. Lane testified that the students are respectful and polite and know the routine, meaning that they enter the classroom, are seated, and immediately begin their work, allowing the teacher to complete the lesson without disruption. Furthermore, [S.K.] testified that she felt unsafe almost every day while attending Bates and was worried about receiving injuries if a student commenced a fight with her. On the other hand, [S.K.] testified that she feels safe at St. Mary's due to the lack of physical and verbal altercations. [S.K.] also indicated that St. Mary's challenges her intellect without constant distractions, she is happier there since she learns more, it is a friendly environment, and she receives academic assistance from teachers during lunch and recess.

With regard to academia, Ms. Lane testified that as a sixth grade Social Studies teacher at Bates, many of her students were reading on a second or third grade level. In fact, Ms. Lane stated that she could not utilize the textbooks provided by the County since the students could not read them. On the other hand, as an eighth grade Language Arts teacher at St. Mary's, Ms.

Lane testified that of her 101 students, approximately 99 of them are reading on an eighth grade level or above.

Furthermore, although Father argues that [S.K.] is not benefiting from private school education as evidenced by her plummeting grades, Mother testified that [S.K.] has been working with St. Mary's staff to address how to effectively study for their tests and to better acquaint herself with St. Mary's form of note taking and study habits. Moreover, Margaret Dammeyer, the Principal of St. Mary's, testified that an adjustment period is normal for a new student at St. Mary's, including learning how to use copybooks which are an integral part of daily educational activity at St. Mary's. Thus, when the Court considers the information presented, the Court believes that [S.K.] is benefiting from attending St. Mary's.

Trial Court Opinion, 3/9/06, at 6–8. As the factual findings of the trial court are supported in the record, we find no reason to disagree with the conclusion of the trial court that S.K. is benefiting from private school.

¶ 9 Father asserts that even if the trial court could reasonably believe that S.K. benefits from private school, the trial court erred in determining that private schooling is consistent with the family's standard of living and station in life before the separation because the children have a history of attending public school. Specifically, Father asserts that standard of living and station of life is a lifestyle choice requiring the court to consider non-economic factors with little regard to the income and wealth of a party.

¶ 10 While there are no cases in this jurisdiction directly on point as to whether non-economic circumstances impact the standard of living and station in life in private school tuition cases, an analysis of

ordinary support cases demonstrates that standard of living is largely determined by economic factors. This Court in *Karp v. Karp,* 455 Pa.Super. 21, 686 A.2d 1325, 1328 (1996) explained the factors to be used in determining standard of living for purposes of a support order. In *Karp,* this Court, in affirming an award of alimony pendente lite and child support to wife, stated: "[T]he critical factor in determining the standard of living is clearly the financial circumstances of the obligee, not his philosophical position on the precise limits of the good life—what he can afford is the question, not what he is willing to pay for." *Id.* The *Karp* Court held that in determining standard of living, one must look to available income and the lifestyle that the income would support. *Id.* This case is consistent with other decisions in this jurisdiction that have defined standard of living and station in life in terms of economic factors. *See Nischal v. Nischal,* 879 A.2d 813, 815 n. 3 (Pa.Super.2005), (stating, in the context of an appeal of a child support order, that "[a]ccording to the American Heritage Dictionary of the English Language, the term 'standard of living' refers to the 'level of material comfort as measured by the goods, services, and luxuries available to an individual, group, or nation.' "); *Edelstein v. Edelstein,* 399 Pa.Super. 536, 582 A.2d 1074, 1077 (1990) (stating, in upholding an award of alimony to wife, that the standard of living to which a wife was entitled was one reasonably supportable by the income and station in life of the parties, irrespective of the fact that the parties lived below their means while they were married); *DeWalt v. DeWalt,* 365 Pa.Super. 280, 529 A.2d 508, 510 (1987) (stating child is entitled to reasonable standard of living based upon social station, fortune and financial achievements of parents); *Branch v. Jackson,* 427 Pa.Super. 417, 629 A.2d 170, 171 (1993) (stating that both the Supreme and

Superior Courts have consistently held that a child is entitled to support in an amount commensurate with his parents' station in life). We further find that both standard of living and station in life have been used interchangeably by Pennsylvania courts. *See Sutliff v. Sutliff*, 339 Pa.Super. 523, 489 A.2d 764 (1985) (stating, in the context of a support action by wife, that husband is under a duty, to the extent he is able, to maintain his family's standard of living at a level consistent with their station in life before the separation.)

¶ 11 Father cites to *Litmans v. Litmans*, 449 Pa.Super. 209, 673 A.2d 382 (1996), and *Pellish v. Gerhart*, 701 A.2d 594 (Pa.Super.1997), to support his assertion that "[i]n every case where the Superior Court has addressed the issue of private school tuition the Court looked at the family history with respect to private school." Father's Brief at 11. Father asks us to find that where there is no family history of attending private school, a court cannot find that private school tuition is a reasonable need and order a parent to provide financial support for private school. This we decline to do. The *Litmans* case dealt with the issue of private school tuition for children who were already attending private school prior to the parties' separation and continued to attend private school post-separation. This case is distinguishable factually from the instant case as S.K. was not in school prior to the parties' separation. Moreover, the *Litmans* court never addressed the issue of the reasonableness of private school tuition but upheld the lower court's decision denying the husband credit for the tuition expenses he claimed because the husband did not provide sufficient documentation of the tuition expense and the wife contributed substantial support to the children's education. We do not agree that because the *Litmans* court noted that the parties' children continued to attend

private school after the parents separated, this means that a court is restricted to awarding private school tuition only in those instances where there is a family history of attending private school.

¶ 12 In *Pellish*, this Court was called upon to determine whether the lower court erred by requiring the father, the non-custodial parent, to contribute to his minor child's private school tuition after the child was removed from a public school and enrolled in a private school. The *Pellish* court found that the lower court did not abuse its discretion in finding that the child would benefit by remaining in private school, as the child was harassed by his classmates at public school and, as a result, felt depressed and isolated and experienced asthma attacks aggravated by the stress, compared with having benefited socially, mentally and physically by transferring to private school. This Court also found that "the lower court did not err in concluding that private schooling for [the child] is consistent with the family's standard of living and station in life before the parties' separation." *Pellish*, 701 A.2d at 597. The Court stated:

> Prior to the separation, [ ], the parties' other child who was a minor at the time, transferred from a public school to a private school when he experienced difficulties at school. He also attended a preparatory school during the summer and an exclusive camp in Cody, Wyoming. The parties expended several thousand of dollars to enable [the older child] to attend private school, preparatory school and summer camp. It is consistent for the lower court to require [f]ather to do the same for [the younger child] in this case.

*Id.* The *Pellish* court required the father to contribute toward his child's private school tuition because private schooling was consistent with the family's standard

of living and because the father's other child attended private school. Consideration of the fact that the older child attended private school prior to the parties' separation was independent of the determination that private school was consistent with the standard of living of the parties and was relevant to counter the father's assertion that private school was not a reasonable expense for his younger child.

¶ 13 We disagree with Father's position with regard to his reliance on *Littmans* and *Pellish*. Neither case stands for the proposition that a determination of whether private schooling is consistent with the standard of living of the parties requires an inquiry into the family history of private schooling or that the standard of living and station in life of the parties cannot be determined by economic factors. In addition, neither case precludes a court from awarding private school tuition for children who have a history of attending public school. Rather, evidence of a family's history of attending private school, while relevant to refute an argument that private schooling is not a reasonable need, is not required in order for a court to conclude that private schooling is consistent with the standard of living and station in life of the parties.

¶ 14 In *Fitzgerald v. Kempf*, 805 A.2d 529 (Pa.Super.2002), this Court was confronted with the question of whether to uphold an award of private school tuition where the parties' children were not yet attending school at the time of separation and, consequently, there was no history of the children attending private school prior to the separation. The *Fitzgerald* court noted that as the children were not of school age at the time of separation it was unclear whether private schooling was consistent with the parties' standard of living prior to the separation. The Court stated

that it agreed with the trial court that " 'private schooling was preferred by mother and accepted by father except for the reservation that he would not want to be financially responsible.' " *Id.* at 533. The Court upheld the order awarding private school tuition, but remanded the case on several issues including a reevaluation of the percentage of tuition the father was required to pay in light of his actual monthly income, which was calculated incorrectly by the trial court. Thus, this Court has awarded private school tuition where there is no history of attending private school prior to separation.

¶ 15 In the instant case, prior to the separation of the parties and Mother's relocation to Maryland, S.K. was not of school age. Upon moving to Maryland, S.K. attended public school until Mother had concerns about the public school she was attending and decided to enroll her in a parochial school, St. Mary's. We have already determined that the trial court's finding that S.K. is benefiting from attending St. Mary's was not an abuse of discretion. S.K. should not be penalized because the need for her to attend private school did not arise prior to the parties' separation.

¶ 16 The trial court determined that the parochial school tuition of $6,230.00 per year is consistent with the parties' standard of living and station in life prior to separation[5] and, thus, is a reasonable need for S.K. The court also determined that S.K.'s parochial school tuition is consistent with Father's income of $133,000 for 2005. The trial court further found that consistent with Pennsylvania Support Guidelines, the tuition must be allocated between the parties in proportion to their net incomes. Pa.R.C.P.1910.16–6(d). We agree. Although the trial court

5. Father's income at the time of the parties' separation in 1997 was $94,136.00.

determined that private school tuition is consistent with the parties' standard of living and station in life based solely on economic factors, we find that its decision is consistent with Pennsylvania law.

¶ 17 Lastly, Father argues that the trial court violated his right of conscience under Article I, Section 3 of the Pennsylvania Constitution in requiring Father to financially contribute to a Roman Catholic school. This issue was addressed by the Superior Court in *Knapp v. Knapp*, 758 A.2d 1205 (Pa.Super.2000). The father in *Knapp*, similar to Father in the instant case, argued that the trial court violated his constitutional right of conscience when it ordered him to pay tuition to a parochial school. This Court concluded that parochial schools fall within the statutory definition of a private academic school and, therefore, within the purview of the Pennsylvania Support Guidelines. This Court further stated that even if it had determined that a parochial school does not fall within the ambit of the statute, the father's prior acquiescence to payment for parochial school and failure to contest a court order to that effect, supported the determination that the trial court did not err in its determination. In rendering its decision, the Superior Court stated, "We note that the requirement that Appellant pay for the children's parochial school tuition does not *per se* amount to a requirement that he support such a place of worship, as defined within the Constitution. Therefore, the applicability of the right of conscience under the facts of this case is questionable." *Knapp*, 758 A.2d at 1206 n. 1. This Court then turned its inquiry to whether the payment to a private institution is a reasonable need for the child. The *Knapp* court concluded that the trial court did not abuse its discretion in ordering support for private school based on the evidence of record that the children previously attended parochial school and after consideration of the "family's income and earning potential." Id. at 1207. Following this rationale, we do not find that the order that Father contribute to a portion of his daughter's parochial school tuition amounts to a requirement that he support a place of worship as set forth in the Pennsylvania Constitution so as to violate his right of conscience. Thus, Father's claim must fail.

¶ 18 We find no error in the trial court's conclusions which are adequately supported by the record and thoroughly explained by the trial court in its opinion. Moreover, we find no error in the trial court's application of the law to these facts in concluding that the evidence in the case supports the trial court's order to include private school tuition in the support amount awarded on behalf of S.K. We, therefore, hold that the trial court did not abuse its discretion in ordering Father to contribute to the parochial school tuition of S.K. in proportion to his net income.

¶ 19 Order affirmed.