J-A04037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| LYNN REMINGTON, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| KELLY KROHN, | |
| Appellee | No. 616 WDA 2015 |

Appeal from the Order Entered March 25, 2015
In the Court of Common Pleas of Allegheny  County
Family Court at No(s): FD07-7323-008

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and SHOGAN, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 13, 2016**

Appellant Lynn Remington ("Mother") appeals from the March 25, 2015 order adopting a master's report and recommendation and denying Mother's petition for modification of child support from Kelly Krohn ("Father").  We affirm.

Mother and Father were divorced in 2010 and signed a final support agreement on April 5, 2011 ("Agreement").  Petition for Modification of Child Support, 7/1/14, at Exhibit B.  The parties have three children.  One is emancipated; the other two are teenagers ("Son," "Daughter," and collectively "the Children").  By court order, Mother and Father equally shared legal and physical custody of the Children.  *Id.* at Exhibit A, ¶¶ 1, 2.  According to the Agreement, Mother and Father agreed that their incomes were approximately equal and that neither would owe guideline child support

to the other. Agreement, 4/5/11, at ¶¶ 2. Rather, Mother would be responsible for Son's expenses, and Father would be responsible for Daughter's expenses; expenses included tuition at a private school ("the School"), extra-curricular activities, camps, clothing, and miscellaneous costs. *Id.* at ¶¶ 4–7, 12. Regarding modification, the Agreement provided as follows: "This Agreement shall only be modifiable based on the disability or death of either party, or if either party should suffer an involuntary underemployment reducing their income by at least 50%." *Id.* at ¶ 13. As of signing the Agreement, Mother was a self-employed orthodontist with a net monthly income of $21,405. N.T., 10/24/14, at 97. Father was an "M.D. researcher with Eli Lilly" with a net monthly income of $15,344. N.T., 10/29/14, at 42.

In the fall of 2013, Son, who was in eighth grade, began experiencing academic and behavioral problems.[1] N.T., 10/24/14, at 23–24; N.T., 10/29/14, at 59–60. The School notified Mother and Father of Son's issues and offered suggestions for improvement. N.T., 10/24/14, at 25. Mother withdrew Son from the School as of January 31, 2014, and enrolled him in an out-of-state boarding school for boys ("the Boarding School") with almost

_____

[1] Prior to eighth grade, Son had reading difficulties, repeated first grade, and had been diagnosed with attention deficit hyperactivity disorder. N.T., 10/24/14, at 35–38, 57, 60, 84; N.T., 10/29/14, at 66. During eighth grade, he was emotionally withdrawn and unmotivated. *Id.* at 40–42, 56–58.

twice the net tuition of the School, $41,994 per academic year versus $22,435. N.T., 10/24/14, at 29, 93–94. Father deferred to Mother regarding Son's education and did not object to her considering the Boarding School. *Id.* at 53, 62, 66, 68–69; N.T., 10/29/14, at 61–62, 67, 83. While enrolled at the Boarding School, Son earned good grades and saw a therapist weekly. N.T., 10/24/14, at 70–74; N.T., 10/29/14, at 84.

Mother filed a petition for modification of support on July 1, 2014 ("Petition"), averring changes in the parties' circumstances. Petition, 7/1/14, at ¶ 7. Upon Father's request, the trial court bifurcated the issues of whether modification of the Agreement was warranted and, if so, what amount of support was owed by either party. Order of Court, 9/3/14. Mother did not object to the bifurcation order.

Special Master Peggy Ferber conducted a modification hearing over two days in October of 2014. Thereafter, she determined that Mother had not established any significant change in circumstances to warrant modification and that the Agreement did not bargain away Son's right to support. Report and Recommendation, 11/5/14, at 6. Having concluded that modification was not warranted, the Master did not address the amount-of-support issue.

Mother filed exceptions on November 7, 2014, which the trial court denied, adopting the Master's Report and Recommendation and making it a

final order.  Order of Court, 3/25/15.  This appeal followed.  Mother and the

trial court have complied with Pa.R.A.P. 1925.

On appeal, Mother presents three questions for our consideration:

1.  Whether the Trial Court erred in determining that the support agreement of the parties was not modifiable.

2.  Whether the Trial Court erred in relying on the lack of income information regarding [M]other's ability to pay [Son's] school expenses as the matter was bifurcated and no income information was provided, with the court refusing to address any financial information of the parties during the proceeding.

3.  Whether the Trial Court erred in failing to recognize the significant increase in the school expenses for [Son] from the extent of schooling expenses that were in existence at the time of the parties' support agreement.

Mother's Brief at 3.

Our review is guided by the following standards:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

***K.J.P. v. R.A.P.***, 68 A.3d 974, 978 (Pa. Super. 2013) (citation omitted).

Despite the terms of a child support agreement, modification is allowed upon

a showing of changed circumstances.  ***See*** 23 Pa.C.S. § 3105(b) ("A

provision of an agreement regarding child support, visitation or custody shall be subject to modification by the court upon a showing of changed circumstances."). Moreover:

> [w]hen modification of a child support order is sought, the moving party has the burden of proving by competent evidence that a material and substantial change of circumstances has occurred since the entry of the original or modified order. The lower court must consider all pertinent circumstances and base its decision upon facts appearing in the record which indicate that the moving party did or did not meet the burden of proof as to changed conditions.

*McClain v. McClain*, 872 A.2d 856, 863 (Pa. Super. 2005) (quoting *Samii v. Samii*, 847 A.2d 691, 695 (Pa. Super. 2004)).

Mother first complains that the trial court erred in determining the Agreement was not modifiable. Mother's Brief at 12. Relying on section 3105(b) of the Divorce Code, 23 Pa.C.S., Mother argues that the Agreement was modifiable due to three changes in circumstances: (1) an increase in Father's income; (2) an increase in Mother's custodial time; and (3) the increase in Son's educational expenses. Mother's Brief at 16–19, 23.

The trial court rejected Mother's premise and explained its ruling as follows:

> Contrary to Mother's assertion, I did not determine that the Agreement was not modifiable. Instead, I determined modification was not warranted under the particular circumstances presented. I found the Agreement was not subject to modification based on Mother's decision to send Son to a significantly more expensive school than that which he was attending at the time the Agreement was executed. Had Mother (or Father) instead, enrolled a child in much more expensive camps, sports, or extra-curricular activities than contemplated at

execution, I would not have modified the Agreement to require the other parent to contribute.

I also determined, as did the Master, that the Agreement did not bargain away the children's right to support. At the time of the parties['] hearing in 2010, Mother made 58% of the combined income of over $35,000.00 per month. {TR. 1 p. 97} Mother did not, in her petition for modification nor in her testimony, indicate an inability to pay for the increased cost of Son's schooling, or that the added expense prejudiced her children.

In **Kraisinger v. Kraisinger**, *928 A.2d 333 (Pa. Super. 2007)*, the [C]ourt stated, "A child's right to adequate support cannot be bargained away by either parent and any release or compromise is invalid to the extent it prejudices a child's welfare." I do not find that the children's welfare is jeopardized or prejudiced. Mother testified that all of the children's needs were met while in her care. {TR. 1 p. 98}[2]

* * *

The testimony, in fact, reveals that Mother knew that it was she who was taking on an extra expense and that she also knew Father was not obligated to pay for it. She sent Father an e-mail in which she "asked him if he would consider helping." {TR.2 p. 34} This testimony demonstrates that Mother was aware that Father was not obligated to contribute to this expense pursuant to their Agreement.

Father testified, through counsel, that he does not find the increased cost of the boarding school to be reasonable and necessary and that therefore, those increased costs do not

_____

[2] Mother also refers to **Kraisinger**. Mother's Brief at 15–17. However, her application of that decision is inapposite. Mother cites **Kraisinger** for the proposition that "agreements that require a party to pay 'substantially less child support than the guidelines would require . . . is not fair or reasonable, and prejudices the welfare of the children.'" **Id.** at 15. However, the case at hand is not a guidelines case, as the parties agreed that "neither party would have any obligation to the other for guideline support." Agreement, 4/5/11, at ¶ 13.

constitute a "significant change of circumstances which would give rise to modification." {TR.2 p. 50} Because Mother took on those expenses without securing Father's consent, I agreed with Father.

Trial Court Opinion, 5/27/15, at unnumbered 5–7.

Our review of the record reveals support therein for the trial court's findings. Pursuant to the Agreement, Mother was contractually responsible for Son's tuition expenses. Agreement, 4/5/11, at ¶¶ 4, 12; N.T., 10/24/14, at 9–10, 31–33. Moreover, Mother chose to send Son to an out-of-state boarding school without informing Father of the ultimate decision or informing the Boarding School about the parties' shared custody arrangement. N.T., 10/24/14, at 64, 86–87, 88–89. Although Mother asked Father if he would consider helping with the additional tuition, she did not ask him for a specific amount of financial help, and she did not secure his consent to contribute to the additional expense. *Id.* at 64, 85, 90; N.T., 10/29/14, at 34. Mother chose to incur the additional cost and was able to meet Son's expenses. N.T., 10/24/14, at 98–99. Based on this evidence, we discern no abuse of the trial court's ruling that modification of the Agreement—although legally permissible—was not warranted based on a change of circumstances.

As for Mother's custody argument, the trial court did not expressly address whether the custodial schedule warranted modification of support. However, Father responds as follows:

It was Mother's testimony at trial that Father has never maintained 50/50 custody of [Daughter] and [Son] since the implementation of the June 15, 2010 custody order. The Final Support Agreement was entered into 10 months after the entry of the custody order, and at a time when Father was to have equally shared custody on a week on/week off basis pursuant to that Order. If Mother's testimony is correct, and Father never exercised equally shared custody under the June 15, 2010 Order, his continuing to not do so after the signing of the April 5, 2011 Final Support Agreement could not constitute a significant change in circumstances warranting modification.

Father's Brief at 6 (internal citations omitted). We agree.

Upon review of Mother's testimony, we consider her assertion that a change in custodial time warrants modification disingenuous. Mother acknowledged that the non-custodial parent had the right of first refusal if the custodial parent could not provide overnight care on a school night. N.T., 10/24/14, at 79–80; Agreement, 4/15/11, at ¶ 14. Both Mother and Father indicated that they sometimes complied with this provision. N.T., 10/24/14, at 47, 81; N.T., 10/29/14, at 57. Also, Mother stated in her petition and testified that they had not maintained the 50/50 custody arrangement. Petition, 7/1/14, at ¶ 8; N.T., 10/24/14, at 78; N.T., 10/29/14, at 10–20. According to Mother, she did not enforce the Agreement by ensuring that Son spent time with Father, even if Son objected or resisted. N.T., 10/24/14, at 83; N.T., 10/29/14, at 24–27. Moreover, Mother did not testify that she was unable to provide for Son because of the custody situation. We conclude, therefore, that Mother failed

to meet her burden of proof in arguing that the custodial schedule warranted modification of the Agreement.

In her second issue, Mother assails the trial court for refusing to address financial information of the parties. Mother's Brief at 19. According to Mother, the near doubling of Father's income "is [a] substantial change of circumstance" justifying modification of the Agreement. *Id.*

The trial court rejected Mother's argument as follows:

> I bifurcated the proceedings upon Motion by Father. I agreed with the premise of that Motion – that if there was no legitimate reason to modify the Agreement, there was no reason for the parties to engage in the extensive discovery and attendant cost necessary to determine each other's incomes and their expenses. Mother's Petition did not assert a change in income; the only change asserted as a basis for modification was Son's tuition increase.

> There is no question whether Mother or Father can afford to pay the increased tuition. The only issue was whether Mother was entitled to modification solely because she was paying more for Son's education than she was at the time of the Agreement, after making what was basically a unilateral decision to incur that extra expense. Since I decided she was not, and since Mother never claimed a significant change in their incomes, there was no need to move forward to determine the actual incomes of the parties.

Trial Court Opinion, 5/27/15, at unnumbered 7.

Upon review, we affirm the trial court's ruling, but on a different basis. *See D.M. v. V.B.*, 87 A.3d 323, 330 n.1 (Pa. Super. 2014) (quoting *Lynn v. Nationwide Ins. Co.*, 70 A.3d 814, 823 (Pa. Super. 2013) ("[W]e may affirm a trial court's ruling on any basis supported by the record on appeal.")). Contrary to the trial court's finding, Mother did raise an increase

in Father's income as a basis for modification of the Agreement: "The parties' incomes have also not remained approximately equal, with the father earning approximately $400,000 per year and the mother earning approximately $230,000 per year." Petition, 7/1/14, at ¶ 23. Moreover, at the hearing, Mother attempted to offer evidence of Father's increased income. N.T., 10/29/14, at 53. However, because the hearing was bifurcated, Mother did not object to the bifurcation, and Mother had not offered evidence of her own income, the Master refused to consider evidence of Father's income. *Id.* at 53–54. The trial court agreed, and so do we.

Son's tuition was Mother's contractual obligation; therefore, under the procedural posture of this case, Father's income had no bearing on the question of who was responsible for Son's tuition, a fact Mother knew as evidenced by her asking Father "if he would consider helping." *Id.* at 34. Accordingly, we conclude that the trial court did not abuse its discretion in refusing to consider the parties' incomes.

Lastly, Mother argues that the trial court erred in failing to consider Son's increased tuition and expenses as a substantial change in circumstances warranting modification of the Agreement. Mother's Brief at 23. In response, Father argues that the increased tuition is not a reasonable or necessary expense pursuant to the child support guidelines. Father's Brief at 4 (citing Pa.R.C.P. 1910.16-6(d)).

The trial court disposed of this issue as follows:

Clearly, Mother is incurring higher educational expenses than she was at the time the parties entered into the Agreement. The Agreement does not require that the parties will always have comparable educational or extracurricular expenses. Indeed, it contemplates Mother having an additional year of tuition after Daughter's graduation.

As for Father's statements that Mother was to "take the lead", I do not find that this equates to Father telling Mother he will acquiesce in whatever she decides. The parties share legal custody of the children. Father still expected a say in the decision, just as he gives Mother her say although he "takes the lead" with regard to Daughter's education. {TR.2 p. 92–93}

In her Memorandum of Law submitted to the Master prior to hearing, Mother argues that the Agreement is unenforceable because it violates the public policy of this Commonwealth, which prohibits a parent from bargaining away a child's right to support, regardless of the validity of the Agreement in all other respects between the parties. *Sams v. Sams*, 808 A.2d 206 (Pa. Super. 2002).

The *Sams* [C]ourt provided that such Agreements could not divest the courts of jurisdiction and that it was for the courts to determine the validity of such Agreements – making them modifiable by the court, regardless of the terms. In this case, I did not find I was divested me [sic] of jurisdiction to modify the parties' agreement if I felt it was appropriate. Under the current circumstances presented, I do not find that this Agreement deprives these children of their right to support.

Conclusion

By asking Father if he would consider helping with the increased tuition, Mother tacitly acknowledged he was not obligated to do so. . . .

Trial Court Opinion, 5/27/15, at unnumbered 7–8.

Upon review, we discern no abuse of the trial court's discretion. In doing so, we first address Mother's reliance on *Gibbons v. Kugle*, 908 A.2d 916 (Pa. Super. 2006). According to Mother, the trial court erred in failing

to apply the **Gibbons** "standard for determining whether private school needs are reasonable and necessary." Mother's Brief at 24. Mother is correct that the **Gibbons** Court held as follows:

> A private school education may be a reasonable need for a child if it is demonstrated that the child will benefit from such and if private schooling is consistent with the family's standard of living and station in life before the separation. If these factors are proved, a court may order a parent to provide financial support for the private schooling of a minor child.

Mother's Brief at 24–25 (quoting **Gibbons**, 908 A.2d at 920). However, Mother ignores the fact that **Gibbons**—and the additional cases she cites at pages 28 and 29 of her brief—involved court-ordered child support pursuant to the Pennsylvania guidelines, Pa.R.C.P. 1910.16-6. In those cases, the court fashioned a child support order by applying the guidelines to the circumstances of the individual families.[3]

Contrarily, as noted, the case at hand involves Mother and Father's mutual agreement regarding child support and, specifically, academic expenses. Pursuant to the Agreement, Mother assumed responsibility for Son's educational expenses, and Father assumed responsibility for Daughter's educational expenses. Agreement, 4/5/11, at ¶¶ 4–7, 12. With Father's acquiescence, Mother investigated and chose to enroll Son in a school that is twice as expensive but more amenable to Son's behavioral and

_____

[3] **Murphy v. McDermott**, 979 A.2d 373 (Pa. Super. 2009) (involving private school); **D.H. v. R.H.**, 900 A.2d 922 (Pa. Super. 2006) (involving out-of-state medical facilities).

academic needs. Mother has not alleged that she cannot afford the tuition and related expenses for Son's attendance at the Boarding School. Rather, recognizing that Father is not obliged to pay for Son's educational expenses, Mother seeks contribution from Father. Given Mother's contractual obligation to pay for Son's schooling and her decision to incur additional academic-related expenses for Son, we disagree with Mother that an increase in Father's income constitutes a change of circumstances warranting modification of the Agreement.

In sum, we discern no abuse of the trial court's discretion in concluding that Mother did not present sufficient evidence of changed circumstances.[4] Therefore, we affirm the order denying modification of the Agreement.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2016

_____

[4] We concur in the trial court's final observation: "[T]his Family's inability to find a way to share the added costs in some fashion is unfortunate. It will not likely do anything to help this family communicate in the future or help heal whatever rifts exist in their relationships." Trial Court Opinion, 5/27/15, at unnumbered 8–9.

- 13 -