J-S25020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SAMEERAH A. HAMMONDS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL A. ALLFORD | : | No. 2213 EDA 2023 |

Appeal from the Order Entered August 25, 2023
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): 14-07457

BEFORE: DUBOW, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED NOVEMBER 25, 2024**

Sameerah A. Hammonds ("Mother") appeals *pro se* from the order denying her exceptions to the child support award. She argues the court erred in not requiring Michael A. Allford ("Father") to pay for private school tuition, child care expenses, and extracurricular activities. We affirm.

Mother and Father have one child, A.R. ("Child"). In October 2021, Father filed a petition to modify the support award. In May 2022, the Hearing Officer issued a proposed order. After Mother filed exceptions, the matter was remanded to the Hearing Officer. The Hearing Officer issued another proposed order in October 2022. Mother again filed exceptions. The trial court remanded for the Hearing Officer to take evidence regarding expenses for tuition and

care/camp. The parties were to bring written proof of their income and expenses.[1]

After the hearing, the Hearing Officer made findings of fact, including that Mother had not requested inclusion of private school expenses until her November 2022 exceptions and that child care and summer camp expenses had been included "at times going back to 2016 and most recently after the [April 15, 2019] hearing." Report of Support Hearing Officer, filed May 8, 2023, at 3.

The Hearing Officer found that Child was in the third grade at the Haverford School, which he had attended since the first grade. *Id.* at 4. The Hearing Officer stated that Mother had testified that the parties were not on speaking terms when she applied for the Haverford School and that there had been an active protection from abuse order at the time. *Id.* The Hearing Officer stated that Father disagreed with Mother's testimony in this regard and that there had been no confirming evidence presented regarding the testimony. *Id.*

The Hearing Officer noted that Mother testified Father had "never participated financially with the school selection" and that Father "was happy

_____

[1] The certified record does not contain documents prior to the May 2023 proposed Order of Support. This history is from the Report of the Support Hearing Officer following the April 2023 hearing. In April 2024, four months after the trial court had filed the certified record, and after this Court granted Mother two extensions of time to file her brief, Mother filed a motion to supplement the certified record. This Court denied the motion. Order, Apr. 26, 2024.

that the child was admitted to the Haverford School and has participated in activities held at or by the school." *Id.* She pointed out that Mother testified that because Father "never tried to have the child withdrawn or sought court intervention to prevent him from attending the Haverford School that mean[t] that he acquiesce[d] to paying towards the school." *Id.* The Hearing Officer disagreed, reasoning that Father "ha[d] made clear over the numerous hearings . . . that he [was] not willing to pay for private school and various other activities." *Id.*

The Hearing Officer stated that Mother had testified that the school tuition was $5,959 for the 2023-24 school year, after grants and scholarships, and that there was a $600 lunch fee. The Hearing Officer further found that Mother had "unilaterally enrolled the child in private school beginning at 2020-21 school year" and "[t]here have been many court dates over that course of time but [Mother] ha[d] not sought inclusion of private school expense." *Id.* The Hearing Officer denied the request to include the private school tuition cost in the support order. *Id.*

The Hearing Officer also concluded that the expense for enrichment and aftercare would not be included in the guideline calculation. She pointed out that the last time child care had been considered in the support case was in 2019, when Child attended a free Pre-K Counts program and the cost for aftercare and summer camp had been included in the guideline calculation. *Id.* at 5. The Hearing Officer found Mother had Child enrolled in school enrichment programs and aftercare three days a week at the Haverford School

and Child was in different programs the other two days. *Id.* The Hearing Officer found Mother had paid $1,117.50 for classes and aftercare from September to November 2022 and $745 for a class and aftercare from November 2022 to February 2023, with an outstanding balance of $905 for Winter and Spring Sessions. The Hearing Officer noted that Mother was unemployed and received disability benefits from Veterans Affair. She found that "[Mother] has not held reported wage earning employment since 2016[,]" but "she had continued to provide volunteer services, intern and do training apprenticeships over the years." *Id.* The Hearing Officer stated that Mother had testified that Child needs to attend afterschool care because Mother volunteers with various community and outreach organizations and was seeking an internship that would allow her to attend law school for free. *Id.* The Hearing Officer denied the request to include child care cost in the guideline calculation. The Hearing officer reasoned that "[C]hild is school age and there are at least 30 hours per week that he is in the care and control of school" and found that Mother "does not need additional child care." *Id.*

The Hearing Officer next addressed Mother's request to include the expense of other activities that Child participates in during the week. She stated that Father testified that he is opposed to Child participating in so many different activities and being scheduled every night of the week and that Mother enrolls Child and then informs him as to how the custody exchanges will work in relation to the activities. The Officer noted that Mother testified that on two nights a week Child is doing either soccer, baseball, or football.

The Hearing Officer ruled that the sports program expense would not be included in the guideline calculation. *Id.* at 6.

The Hearing Officer next addressed the summer camp expense. She found that the "child has attended summer camp since the pre-K program" and Father had never objected. *Id.* The Hearing Officer noted that Mother had submitted two different amounts that she could not reconcile. The Hearing Officer concluded that a "[c]amp expense of $875 for 2022 [would] be included in th[e] calculation." *Id.*

Mother filed exceptions arguing the Hearing Officer erred in: not including child care expenses because they were necessary for Mother to maintain appropriate education in pursuit of income and because the enrichment programs are instrumental to Child's growth and development; miscalculating the summer camp expense; not including tuition costs, as attending private school is in Child's best interest and Father knew she was applying to private schools; and deeming the extracurricular activities a child care expense rather than additional expenses. She further requested a new hearing officer, alleging bias.

The trial court held a hearing on the exceptions. At the hearing, Mother attempted to provide additional evidence that Father had agreed to send Child to private school. N.T., Aug. 25, 2023, at 10. The court informed Mother it could not look at the documents, which Mother had not provided to the Hearing Officer. *Id.* Mother told the trial court that she had not requested payment for the tuition before filing the 2022 exceptions because Father had

been paying $1,900 a month in child support, which was sufficient to cover the tuition. *Id.* at 19, 34.

The court sustained the exception to the calculation of the summer camp expense. It ordered an additional $450 in summer camp expenses for 2022 and 2023 and therefore increased the support monthly award by $19. The court overruled the remaining exceptions. Mother timely appealed.

Mother raises the following issues:

> A. Whether the Trial Court erred as a matter of law by misinterpreting and misapplying Pa.R.C.P. 1910.16-1 and Pa.R.Civ.P.No. 1910.16-2 of the Pennsylvania Child Support Guidelines as well as misinterpreting case law, *Fitzgerald v. Kempf*, *Pellish v. Gerhart*, and *Gibbons v. Kugle* presented at the hearing ultimately causing her to fail in considering relevant legal principles to determine whether private school tuition expenses, enrichment expenses, after-care expenses, and extracurricular expenses are reasonable, in the best interest of the child, and should be allocated between the parties?
>
> B. Whether the trial court erred as the findings of fact weren't supported by the evidence presented, *Fitzgerald v Kempf*, *Pellish v. Gerhart*, and *Gibbons v. Kugle* at trial?
>
> C. Whether the trial court erred by not allowing evidence to be presented, that was brought in that showed the benefits of The Haverford School vs [Child]'s neighborhood school?
>
> D. Whether the trial court erred by considering [Father's] current income rather than his actual income before his voluntary parental leave of absence and voluntary reduction in work hours, which accounted for a reduction in income?
>
> E. Whether the trial court abused her discretion by sustaining the support Order of Support Hearing Officer based on precedence and a non-existing agreement to pay, rather than the actual standard of law pursuant to Title 231 Chapter 1910 231 Pa. Code Rule 1910.16-6. Support

Guidelines, Basic Support Obligation Adjustments, Additional Expenses Allocation.

F. Whether trial court procedurally erred during the trial court proceedings by violating procedural rules or due process by legally representing and defending [Father], who was not in attendance, at the uncontested hearing?

G. Did the trial court err as a matter of law in not properly weighing [Mother's] testimony of the statutes and presented case law, in that the court focused primarily on precedence and a non-existing agreement, wherein the statute and case law appears to outweigh all other credible testimony put forth during the hearing?

Mother's Br. at 9-11.

Our standard of review regarding child support orders is well settled.

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*C.H.Z. v. A.J.Y.*, 262 A.3d 604, 607 (Pa.Super. 2021) (quoting *Mencer v. Ruch*, 928 A.2d 294, 297 (Pa.Super. 2007)). Where "the issues involve interpretation and application of the Rules of Civil Procedure, which are questions of law, we employ a *de novo* standard of review and plenary scope of review." *Id.* (quoting *Hanrahan v. Bakker*, 186 A.3d 958, 966 (Pa. 2018)).

We will address Mother's first two issues together, as they are related. Mother argues the trial court misapplied the case law she provided "by focusing on the differences as opposed to the striking similarities to the case at hand." Mother's Br. at 19. She maintains that, based on the case law, both parties should incur expenses for the private school tuition because it was reasonable, in Child's best interest, and in accordance with the families' station in life. Mother argues that Section 4321(2)[2] provides that parents must support their minor children, and that the requirement applies to both parents.

Mother states that the guidelines set forth an amount of support a parent should pay based on the parties' net incomes and the number of dependents, and points out that a person is expected to meet the obligation regardless whether they want to pay the support. She then cites to Rule 1910.16-6, which allows a court to make adjustments to the basic support obligation for various factors, including child care expenses, private school tuition, and summer camp. She faults the trial court for adjusting only for summer camp when the Rule allows for other adjustments. She claims that "[n]o where [*sic*] in [Pennsylvania] state law does it indicate that these expenses are to be one-sided and paid only by one parent as opposed to both which is why the payment allocation guide exist[s.]" *Id.* at 23. She maintains that the only factor the Hearing Officer considered when determining whether

_____

[2] Section 4321(2) provides that "Parents are liable for the support of their children who are unemancipated and 18 years of age or younger." 23 Pa.C.S.A. § 4321(2).

to deviate from the guidelines was "other support obligations." ***Id.*** (citing Pa.R.C.P. 1910.16-5. Mother relies on ***Fitzgerald v. Kempf***, 805 A.2d 529 (Pa.Super. 2002), ***Pellish v. Gerhart***, 701 A.2d 594 (Pa.Super. 1997), and ***Gibbons v. Kugle***, 908 A.2d 916 (Pa.Super. 2006), in support of her claim that the court erred in not requiring Father to pay for the private school tuition.

A trial court is obligated to award child support in accordance with the Support Guidelines established by the Pennsylvania Supreme Court, which are contained in Rules 1910.16-1 through 1910.16-7 of the Rules of Civil Procedure. 23 Pa.C.S.A. § 4322; Pa.R.C.P. 1910.16-1-16-7. Rule 1910.16-6 controls the allocation of additional expenses between the parties. Rule 1910-16.6(a) governs the cost of child care expenses and provides:

> **(a) Child care expenses.**
>
> (1) The trier-of-fact:
>
>> (i) shall allocate reasonable child care expenses paid by the parties, if necessary to maintain employment or appropriate education in pursuit of income.
>>
>> (ii) may allocate reasonable child care expenses paid by the parties when the trier-of-fact imputes an earning capacity to a party as provided in Pa.R.C.P. No. 1910.16-2(d)(4)(i)(D).

Pa.R.Civ.P. 1910.16-6(a). Regarding private school tuition, summer camp, or other additional expenses, Rule 1910.16-6(d) provides:

> **(d) Private School Tuition or Summer Camp. Other Additional Expenses.** Expenses outside the scope of typical child-rearing expenses, such as private school tuition, summer camp fees, and other additional expenses as set forth in subdivision (d)(2), have not been factored into the Basic Child Support Schedule.

(1) *Private School Tuition or Summer Camp.* If the trier-of-fact determines that private school or summer camp is reasonable under the parties' circumstances, the trier-of-fact shall apportion the expense to the parties.

(2) *Other Additional Expenses.* The trier-of-fact shall apportion an additional expense to the parties, if the trier-of-fact determines that the expense:

> (i) is related to the child's educational, extra-curricular, or developmental activities; and

> (ii) is reasonable under the parties' circumstances.

Pa.R.Civ.P. 1910-16.6(d). This Court has held that

> A private school education may be a reasonable need for a child if it is demonstrated that the child will benefit from such and if private schooling is consistent with the family's standard of living and station in life before the separation. If these factors are proved, a court may order a parent to provide financial support for the private schooling of a minor child.

*Gibbons*, 908 A.2d at 920 (quoting *Pellish*, 701 A.2d at 596).

In *Pellish*, Father appealed an order requiring him to contribute to the child's school tuition. There, Mother presented evidence that when in public school, the child had been harassed verbally and physically, pushed into a locker, thrown down the stairs, pushed into mud, and classmates had attempted to dunk his head in a toilet. *Id.* at 596. The child testified that he felt depressed, isolated, frightened and defenseless when in public school, and that he had experienced asthma attacks while in public school. *Id.* In public school, the child had not joined any extracurricular activities and had few friends. *Id.* In contrast, the child enjoyed attending private school and no longer was harassed. *Id.* at 597. His asthma had improved since starting

- 10 -

private school and he had joined extracurricular activities and made "numerous friends." *Id.* His mother testified that since starting private school, the child was an "active, excited, bright student." *Id.* Further, a psychologist testified that it would be "disastrous" for child to return to public school, as the child's mental and physical well-being would suffer. *Id.* He testified that if the child returned to public school, he would lose his self-confidence and would not be challenged academically. *Id.*

This Court concluded that, based on the evidence presented, it was not an abuse of discretion to find the child would benefit from remaining in private school. *Id.* We further concluded that it was not error to conclude that private schooling was consistent with the family's standard of living and station in life before the separation, as prior to separation the parties' other child transferred to a private school when he experienced difficulties. *Id.* We concluded that the "parties expended several thousands of dollars to enable [the other child] to attend private school, preparatory school and summer camp," and it was "consistent for the [trial] court to require [the f]ather to do the same for [the child] in this case." *Id.*

In *Gibbons*, the child was not school-age when the parties separated, and the child attended public school through the sixth grade. The tuition at the private Catholic school where the child attended seventh grade was $6,230 per year. The mother requested a support modification based on the new tuition payments and presented evidence that the child encountered many disruptions from learning at the public school, including that there were

- 11 -

frequent verbal and physical altercations and disruptions in educational instruction, as the students talked back to the teachers, argued and fought with each other, wandered around the classroom, and yelled across the room. *Gibbons*, 908 A.2d at 920. The child did not encounter the disruptions at the private school. Further, the child testified that she felt unsafe at the public school and safe at the private school and that she felt the private school challenged her intellect without constant distractions, she was happier at the private school, which had a friendly environment, and she received academic assistance from teachers at the school. The trial court ordered the father to pay a portion of the cost. *Id.*

This Court concluded it was not an abuse of discretion to find the child benefited from private school. *Id.* at 921. We further found it was not an abuse of discretion to find the tuition cost of $6,230 per year consistent with the parties' standard of living and station in life prior to separation where the father's income was $94,136 in 1997, the time of separation, and $133,000 at the time of the hearing. *Id.* at 923-24, 923 n.5.

In *Fitzgerald*, the father was the sole shareholder in a subchapter-S company with reported sales in 1999 of $15 million dollars. 805 A.2d at 531. This Court remanded to the trial court due to various errors, including in calculating the income and in not determining the reasonable needs of the children. When addressing the father's claim that the court erred in ordering him to pay 75% of private school tuition, we noted that the children were not of school age at the time of separation, and it was "unclear whether private

schooling [wa]s consistent with the parties' standard of living prior to the separation." *Id.* at 533. We stated that we agreed with the trial court's finding that "private schooling was preferred by [the] mother and accepted by [the] father except for the reservation that he would not want to be financially responsible." *Id.* (citation omitted). We affirmed the order requiring the father to contribute to the tuition, but remanded for the court to "reevaluate the percentage of tuition [the father was] required to pay, in light of his actual monthly income, and lower it accordingly." *Id.* This Court did not discuss whether the children would benefit from attending private school. *Id.*

Here, the trial court concluded the cases relied on by Mother did not require payment of private tuition expenses in this case. Trial Court Opinion, filed Dec. 29, 2023, at 6 ("1925(a) Op."). The court noted that in *Gibbons* and *Pellish*, the parties had shown that the children in those cases would benefit from private schooling, as the children struggled with bullying, distractions, and a poor learning environment before transferring to private school. 1925(a) Op. at 7. The court pointed out that in those cases, in private school, the children were happier, more secure, more inclined to make friends and to succeed in class, and experienced a better learning atmosphere. *Id.* The court further noted that in *Pellish*, the obligor had previously paid for an older child's private schooling, which showed the family's standard of living included private school. 1925(a) Op. at 7. Further, the court in *Gibbons* found private school was consistent with the parties' standard of living. 1925(a) Op. at 7. The trial court further noted that the court in *Fitzgerald* did not examine

the benefits of private school but did briefly discuss the standard of living, and had found that the father, who was the sole shareholder in a subchapter-S company, was responsible for some of the tuition even though private school was preferred by the mother and accepted by the father and he did not want to be financially responsible. 1925(a) Op. at 7.

The trial court found that Mother presented no evidence that private schooling would benefit Child, as she did not explain how the Haverford School was better for Child than the local public school. *Id.* It further pointed out that Mother did not present evidence Child needed private schooling. *Id.* The trial court further found that Mother did not establish the standard of living prong, where Father's gross annual income was $65,000 per year. *Id.* at 8. It contrasted this with the incomes in *Gibbons* and *Fitzgerald*. The court noted that in *Gibbons*, the father's annual income was $94,136 in 1997 and Child's tuition was $6,230and in *Fitzgerald*, the father was a sole shareholder of a subchapter-S company that have reported sales of $15 million dollars in 1999. 1925(a) Op. at 8.

The record supports the trial court's findings of fact and it did not abuse its discretion in concluding Mother failed to establish that private school tuition was a reasonable expense in this case.

Further, to the extent Mother challenges the denial of the costs for child care and extracurricular activities, the claim lacks merit. The record supports the Hearing Officer's findings of fact, including that Mother did not need the

child care expenses as she could be home with Child after school. The trial court did not abuse its discretion in denying the exceptions.

Mother next argues the court erred by using Father's current income, rather than his income before an allegedly voluntary parental leave of absence and allegedly voluntary reduction in work hours. She argues that Father voluntarily took a reduction in work hours for 2022 and a voluntary leave of absence in 2023 and it was error to change his support obligation based on this voluntary reduction. She argues she raised this before the Hearing Officer, but both the Hearing Officer and trial court disregarded it. She claims that the Hearing Officer's report outlined the prior seven years of Father's income, including where he made more than $100,000 annually. Mother argues that his income increased to his prior earnings in 2023. She further claims the paystubs entered into evidence were fake, noting that there are two different addresses on the pay stubs.

The trial court concluded Father's gross and monthly net income were determined using the testimony and evidence presented at the hearing, and that the Hearing Officer made credibility determinations. 1925(a) Op. at 12. The court stated that Mother presented no evidence that Father had voluntarily reduced his work hours. *Id.* The trial court further noted that Mother's May 2023 exceptions do not mention a dispute concerning Father's income or claim that he voluntarily reduced his hours. *Id.*

We agree. Mother waived this claim because she did not include it with her exceptions filed in the trial court. Further, even if she had not waived it,

- 15 -

the record supports the trial court's findings and it did not abuse its discretion in setting Father's income.

Mother further claims the court abused its discretion by applying an incorrect standard when it denied her request for private schooling on the grounds that she had not previously requested such payments and Father did not want to pay. She claims the standard is whether the expense is reasonable, in the child's best interest, and in line with the parties' station in life. She argues she did not previously request private school tuition expenses because she had been receiving sufficient funds from the support order to pay the tuition. She claims that when the support order was changed to a lower amount, she had to request the tuition payment.

The trial court found Mother had no right to request support for the private school tuition because, although Father had no "issue with" Child attending private school, "[h]e just d[idn't] want to pay for it." 1925(a) Op. at 9. The court found Father's "repeated refusal to pay for the Haverford School's tuition is well within his legal custodial rights." *Id.* The court noted that Mother did not request payment of the tuition until November 2022. The court took the pattern of Mother requesting assistance from Father for summer camp and child care but not tuition "into account when denying [Mother's] request as it has never previously been included in the calculations and [Mother] could not show a change in circumstances that would merit adding this new expense to the calculation." *Id.* at 9-10.

This was not error. Mother did not request money for private school tuition prior to the November 2022 exceptions. The record does not include any agreement from Father to pay the tuition costs. The court considered the lack of agreement, but it ultimately denied the request because Mother failed to establish the cost was reasonable. This claim lacks merit.

Mother next claims the August 2023 hearing was "uncontested" because Father did not appear. She argues that "the trial court put up quite a defense for [Father] who wasn't present which was a procedural error and violation of due process." Mother's Br. at 31. She claims the trial court showed bias and ill-will by "put[ting] up a defense" for Father. *Id.* at 32.

The trial court concluded Mother's claim was unsupported by the record. It concluded there is nothing in the transcript of the hearing "that indicates the trial court was 'representing' or 'defending' the absent [Father]." 1925(a) Op. at 14. It noted it provided Mother with a copy of the Hearing Officer's report, examined the exhibits, and went through Mother's exceptions. It noted that the court "often disagreed with [Mother's] assertions but attempted to explain the relevant law each time and treated [Mother] with respect and patience." *Id.* at 15. It further noted that when Mother "declared the caselaw she cited showed she was correct, the trial court respectfully disagreed and attempted to explain the controlling law." *Id.* It stated that Mother "mistakes the trial court's effort to defend the [Hearing Officer's] proper execution of child support calculations as argument on behalf of [Father]." *Id.*

Mother's claim lacks merit. A review of the transcript corroborates the trial court's findings. The court went through the exceptions and, although it disagreed with Mother's assertions, it did not defend or represent Father. This claim fails.

Mother next claims the court erred "in not properly weighing [Mother's] testimony of the statutes and presented case law, in that the court focused primarily on precedence and a non-existing agreement, wherein the statute and case law appears to outweigh all other credible testimony." Mother's Br. at 32.

As discussed above, the trial court considered the case law and statutes on which Mother relied. However, the case law and statutes do not support Mother's position. This claim fails.

Mother next argues that the court erred when it did not permit her to present evidence of the benefits of Haverford School as compared to the neighborhood school. She argues that the trial court allowed her to present caselaw at the hearing on the exceptions, which she alleges contradicted the court's claim she could not present evidence that she had not admitted before the Hearing Officer. She claims the Hearing Officer and trial court did not give her an opportunity to show that private school was a reasonable expense.

The trial court must "conduct a complete and independent review of the evidence when ruling on the exceptions." *Sirio v. Sirio*, 951 A.2d 1188, 1196 (Pa.Super. 2008) (citation omitted). However, its "scope of review is limited to evidence received by the hearing officer." *Id.*

Here, when conducting an independent review of the record to decide Mother's exceptions, the court was limited to reviewing evidence received by the Hearing Officer. It did not err when it refused to consider any new evidence submitted by Mother. Case law and statutes are not evidence.

We affirm.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/25/2024